UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HUDSON SPECIALTY INSURANCE COMPANY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-14-1231 |
| § | |
| CRAIG BLAND, § | |
| § | |
| *Defendant.* § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are (1) cross motions for summary judgment filed by plaintiff Hudson Specialty Insurance Company ("Hudson") and defendant Craig Bland (Dkts. 13, 15); and (2) a motion to strike summary judgment evidence filed by Hudson (Dkt. 17). After considering the motions, related filings, and the applicable law, the court is of the opinion that Hudson's motion for summary judgment (Dkt. 13) should be GRANTED IN PART AND DENIED IN PART, Bland's motion for summary judgment (Dkt. 15) should be GRANTED, and Hudson's motion to strike (Dkt. 17) should be GRANTED.

**I. BACKGROUND**

This case is about whether an umbrella insurance policy requires the insurance company to defend its insured in an underlying case relating to a car accident. Bland owns several automobiles, and he acquired a policy from Progressive that covers his 2012 Hyundai, his 2010 Lincoln Navigator, his 2008 Chevrolet Corvette, and his 1931 Model A. *See* Dkt. 13, Ex. 1 at Ex. O (Schedules). He also purchased a personal umbrella policy from Hudson that was effective from August 13, 2012, through August 13, 2013 ("Hudson Policy"). Dkt. 13, Ex. 1 at Declarations, Item 2. The Hudson Policy purports to provide, among other things, defense costs relating to any items covered by the

policy that are not covered or required to be covered by the underlying insurance. Dkt. 13, Ex. 1 § III.

On July 1, 2014, Christopher Heuszel filed a claim in state court against Bland and his son, Scott Bland ("Underlying Petition").[1] Dkt. 13, Ex. A. Heuszel alleges in the Underlying Petition that Bland negligently entrusted a vehicle Bland owns to Scott Bland. *Id.* Heuszel was allegedly a passenger in this vehicle while Scott Bland was driving. *Id.* Heuszel contends that Scott Bland failed to control his speed and caused the vehicle to leave the road and hit a tree. *Id.* Heuszel sustained various injuries that resulted in medical bills and lost wages. *Id.* Heuszel contends that Scott Bland had a history of recklessness, known by Bland, and that Bland's entrustment of the vehicle to Scott Bland was negligent or grossly negligent. *Id.*

Hudson filed a complaint in this court seeking a declaratory judgment that it owes no duty to defend under the Hudson Policy unless and until $500,000 is paid towards the claims against Bland in the underlying lawsuit. Dkt. 1. Hudson also seeks a declaratory judgment that it has no duty to pay or indemnify Bland for any award of punitive damages that are excluded under the Hudson Policy. *Id.* The parties have now filed cross motions for summary judgment. Dkt. 13, 15.

Hudson argues that the court should grant summary judgment in its favor because the Underlying Petition alleges that Bland owns the vehicle involved in the accident and was thus required under the Hudson Policy to maintain primary automobile coverage with a limit of $500,000 on the vehicle. Dkt. 13. Hudson contends that the Hudson Policy states that Hudson has no duty

---

[1] The court refers to Scott Bland as "Scott Bland" throughout this order. Any references to "Bland" without a first name are references to the defendant in this case, Craig Bland.

2

to defend if the underlying policy has a defense requirement.[2] *Id.* Hudson thus requests that the court grant summary judgment in its favor and issue a summary declaratory judgment that Hudson owes no duty to defend Bland for any of the claims in the Underlying Petition unless and until the primary or underlying insurance limit of $500,000 is paid. *Id.*

Bland contends that the Hudson Policy—an umbrella policy—is intended to provide for gaps in coverage as well as excess. Dkt. 15. He argues that under the Hudson Policy bodily injury claims stemming from Bland's entrustment of *any vehicle he owns* are covered if the claims are not covered by the underlying insurance. *Id.* Bland asserts that the Hudson Policy contains explicit language indicating coverage for vehicular negligent entrustment claims brought against Bland, and Hudson's attempt to characterize the policy as merely an excess policy as opposed to an umbrella policy is a mischaracterization. *Id.* Bland thus seeks summary judgment in his favor and a finding that Hudson must defend Bland in the underlying case and that Bland is entitled to coverage under the Hudson Policy as a matter of law. *Id.*

Hudson also claims that it owes no duty to pay or indemnify Bland for any award of punitive or exemplary damages because these damages are excluded under the Hudson Policy. Dkt. 1. Bland does not dispute that punitive and exemplary damages are excluded under the plain language of the Hudson Policy. Dkt. 15. Bland contends, however, that regardless of whether punitive damages are covered, the insurer is required to provide a defense of the entire suit at least until it can limit the suit to those claims outside of the policy coverage. *Id.*

---

[2] Hudson also contends that the Progressive policy required Progressive to defend, but the court cannot consider this argument as the Progressive Policy is not contained within the Hudson Policy or the Underlying Petition. *See* Part II.B, *infra*.

The court will first discuss the law applicable to the determination of the duty to defend and interpretation of the Hudson Policy. It will then determine whether it should consider a declaration filed by Bland as part of the summary judgment record, as Hudson moves to strike the affidavit. The court will next set forth the relevant provisions in the Hudson Policy and will analyze whether, in light of the terms of the Hudson Policy and the allegations contained in the Underlying Petition, Hudson has a duty to defend Bland. Lastly, the court will address Hudson's request for a declaratory judgment that it is not liable for punitive or exemplary damages.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### B. Duty to Defend

Texas law applies to this diversity case. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Under Texas law, courts follow the "eight corners" rule to determine whether a party has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir.

1999). "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleadings and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.* Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). They must not, however, "read facts into the pleadings, . . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142. The "duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012) (citing Texas cases and applying Texas law).

If the insurance policy can be given definite and certain legal meaning on its face, it is not ambiguous. *Id.* at 842. However, if the language in the policy is subject to two or more reasonable interpretations, it is ambiguous. *Id.* If an insurance policy is ambiguous, the court must interpret it in favor of the insured. *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)).

### III. MOTION TO STRIKE

Bland filed a declaration in support of his counter motion for summary judgment. Dkt. 15, Ex. 1. It discusses Bland's vehicles, insurance policies, and reasons for purchasing the umbrella

5

policy. *Id.* Hudson moves to strike the declaration, arguing that it is inadmissible as the court may only consider the eight corners of the Underlying Petition and the Hudson Policy when determining whether there is a duty to defend under the Hudson Policy. Dkt. 17. The court agrees that the declaration contains evidence that it may not consider when determining the duty to defend under Texas law. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 491. Hudson's motion to strike (Dkt. 17) is therefore GRANTED. The court will not consider the declaration.

## IV. THE POLICY

There are several provisions of the Hudson Policy that are relevant to this case. The court sets forth the text of each of these provisions in this Part and will analyze the meanings of the relevant provisions in Part V, *infra*.

**A.     Declarations**

Item 5 of the Declarations addresses "Limits of Liability," stating that "defense costs are provided outside this limit." Dkt. 13, Ex. 1 at Declarations. For bodily injury, personal injury, and property damage, the liability coverage is $1,000,000. *Id.*

Item 6 discusses the "retained limit (self insured retention)." It is listed as "NONE" for "bodily injury, personal injury, and property damage liability coverage." *Id.*

Item 7 of the Declarations is entitled "Schedule of Underlying Insurance." *Id.* It begins as follows:

> It is agreed by the Insured that insurance policies providing the following coverage: (1) Are in force and will be maintained in force (whether collectible or not) for at least the minimum underlying limits of liability stated hereafter; (2) Insure all automobiles owned, or leased by or regularly furnished to the insured . . . .

*Id.*

The "minimum underlying limits" section for automobile liability in the Declarations points to the attached schedule, "HUD-PUMB0007." *Id.*

**B.     Schedules**

The Schedules in Endorsement #0 are labeled HUD-PUBB0007. The list of vehicles on the Schedule of Auto Liability include the Hyundai, the Lincoln, the Chevrolet Corvette, and the Model A. Dkt. 13, Ex. 1 at Schedules. They are each listed separately, along with the insurance carrier for each automobile and the limit for that automobile. *Id.* Each automobile is listed as insured by Progressive for a limit of $500,000. *Id.* There is not a catchall provision in this section that indicates that all cars owned must be insured by Progressive for $500,000 limits; it simply lists the insurance and limits for these specific vehicles. *Id.*

**C.     Coverage**

The next provision the court must consider is the relevant coverage provision—Coverage A—because the duty to defend does not arise under the Hudson Policy unless the occurrence is covered under Coverage A.

> **I.     COVERAGES**
> Coverage A – Excess Bodily Injury, Personal Injury and Property Damage Liability.
> The Company will pay on behalf of the Insured the amount of ultimate net loss, which the insured becomes legally obligated to pay:
> 1.     In excess of the underlying limits (whether collectible or not) because of bodily injury, personal injury, or property damage to which this policy applies, caused by an occurrence; or
> 2.     In excess of the retained limit (self-insured retention) because of bodily injury, personal injury, or property damage to which this policy applies, caused by an occurrence which is not covered by or which is not required to be covered by the underlying insurance.

Dkt. 13, Ex. 1 at ¶ I (Hudson Policy, Part One).

**D.     Persons Insured**

If one is considering whether there is coverage under Coverage A, section 2, the first question is whether the damages requested in the underlying complaint are "because of bodily injury, personal injury, or property damage to which this policy applies." The obvious question when reading this section is what does "to which this policy applies" mean? The parties point to the portion of the Hudson Policy discussing "Persons Insured" to clarify the extent to which the Hudson Policy applies. The "persons insured" by the policy, "[w]ith respect to automobiles or watercraft to which [the] [Hudson] Policy applies," include the "named insured, while using any automobile or watercraft." Dkt. 13, Ex. 1 ¶ VI.

**E.     Maintenance of Underlying Insurance**

The Policy requires maintenance of underlying insurance as follows:

> 1     With respect to Coverage A, the named insured agrees to maintain insurance in full effect during the policy period for the coverages, and minimum underlying limits set forth in Item 7 of the Declarations. Such insurance shall not afford sublimits of liability with respect to any coverage of driver. . . .

Dkt. 13, Ex. 1, Condition C.1.

**F.     Definitions**

"Occurrence" as used in the Hudson Policy means "an accident or accidental event . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured (other than an intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property. . . ." Dkt. 13, Ex. 1 at Definitions.

"Retained limit (self insured retention)" as used in the Hudson Policy means "the amount of ultimate net loss set forth in Item 6 of the Declarations, which shall be paid by or on behalf of the insured before liability attaches to the Company [Hudson]." *Id.*

"Underlying insurance" as used in the Hudson Policy means "the insurance policies scheduled in Item 7 of the Declarations." *Id.*

"Underlying limits" as used in the Hudson Policy means the greater of the "amounts set forth in Item 7 of the Declarations as the underlying limits," or "the sum of the applicable limits of liability of all insurance available to the insured for injury or damage to which this policy applies . . . ." *Id.*

"Using" as used in the Hudson Policy means "maintaining, *entrustment to others*, operating, loading, or uploading." *Id.* (emphasis added).

### G. Duty to Defend

Section III of the Policy is called "Defense and Settlement." Dkt. 13, Ex. 1 § III. It reads as follows:

> A. With respect to occurrences which are covered under Coverage A of this policy but which are not covered or required to be covered by the underlying insurance, the Company, if no other insurer has an obligation to do so, shall defend any suit against the insured seeking damages on account of bodily injury, personal injury, or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent; and the Company shall have the right to make such investigation and settlement of any claims of suit as it deems expedient.
>
> B. Except as specifically provided under A. above, the Company shall have no duty or obligation to assume the responsibility for the investigation, settlement, or defense of:
>  1. any claim made or suit brought against the insured under Coverage A . . . .

Dkt. 13, Ex. 1 § III.

## V. Duty to Defend Analysis

From the Underlying Petition, it is clear that Bland has been sued for negligent entrustment of an automobile he owned. Dkt. 13, Ex. A. The Underlying Petition does not indicate *which* automobile Bland allegedly negligently entrusted to his son, only that Bland owned the automobile.[3] *Id.* The court will thus consider whether the Hudson Policy requires Hudson to defend Bland for negligent entrustment of a generic automobile that Bland owns.

### A.     Does Bland Meet the First Requirement in Item 7 of the Declarations?

In the first part of Item 7 of the Declarations, Bland as the insured agreed that insurance policies providing coverage were in force "for the minimum underlying limits of liability stated hereafter." Dkt. 13, Ex. 1 at Declarations, Item 7. Item 7 points to the attached schedule for the "minimum underlying limits." *Id.* The schedule lists only the limits for the Hyundai, the Lincoln Navigator, the Chevrolet Corvette, and the Model A. Dkt. 13, Ex. 1 at Schedules. The definition of "underlying limits" refers to the greater of either the amounts in Item 7 or "the sum of the applicable limits of liability of all insurance available to the insured for injury or damage to which this policy applies . . . ." Dkt. 13, Ex. 1 at Definitions. Thus, if the limits are not listed in the schedule, which they are not for unlisted vehicles that Bland owns, then the minimum underlying limits must be the sum of the limits of liability of any insurance available to Bland if the Hudson Policy applies to the injury or damage alleged in the Underlying Petition. The court will discuss whether the policy applies in Part V.C, *infra*.

---

[3] While both parties agree that the automobile involved in the underlying case was a Grand Am, the Underlying Petition does not say that. Since the type of vehicle involved in the accident is not specified in the Underlying Petition or the Hudson Policy, the court cannot consider that fact in its duty to defend analysis.

B.  **Does Bland Meet the Second Requirement in Item 7 of the Declarations?**[4]

The second part of Item 7 requires the insured to insure all automobiles owned. Dkt. 13, Ex. 1 at Declarations, Item 7. The Underlying Petition states that "[d]ocumentation from the State of Texas indicates that after the accident made the basis of this suit, CRAIG BLAND, as the lawful owner, sold the vehicle to American Access Insurance Company for the purchase of the vehicle that was totaled as a result of the accident." Dkt. 13, Ex. A at 4. Since the court must give all allegations in the Underlying Petition a liberal interpretation, this court construes this to mean that the vehicle that was involved in the accident was insured through American Access Insurance Company. Thus, Bland seemingly met the requirement to insure the vehicle involved in the accident.

C.  **Does the Hudson Policy Apply?**

The next question is whether the Hudson Policy applies to the injury alleged in the Underlying Petition. The first portion of Coverage A in the Hudson Policy requires Hudson to pay the ultimate net loss "the insured" is legally obligated to pay that is in excess of the underlying limits. Dkt. 13, Ex. 1 at § I(1). Under the Hudson Policy, "persons insured" includes, with respect to automobiles to which the Hudson Policy applies, the "named insured, while using any automobile or watercraft." Dkt. 13, Ex. 1, § VI.A.1.a. Since "using" includes "entrustment to others," Bland is a "person insured."

Hudson argues that because Bland owned the vehicle in question, he was required to maintain a $500,000 primary policy limit on that vehicle, and Coverage A only applies to the excess of the $500,000 underlying limits. Dkt. 13. Bland argues that the Hudson Policy is an umbrella policy that

---

[4] There are four requirements listed in Item 7 of the Declarations, but the third and fourth item relate to insurance on premises and watercraft, respectively. *See* Dkt. 13, Ex. 1 at Declarations, Item 7(3)–(4).

11

covers horizontal as well as vertical loss. Dkt. 15. If, in fact, the vehicle in question is the Hyundai, the Lincoln Navigator, the Chevrolet Corvette, and the Model A, then Bland was required to maintain a $500,000 primary policy limit on the vehicle because the Hudson Policy has underlying limits of $500,000 for these vehicles. If the vehicle in question is a different vehicle owned by Bland, though, the underlying limits are not set forth in the schedule and must be the sum of the limits of liability of any insurance available to Bland as per the definition of "underlying limits." *See* Part V.A, *supra*.

Bland relies on the second part of Coverage A, which indicates that the Hudson Policy covers the amount of ultimate net loss which Bland becomes legally obligated to pay "in excess of the retained limit (self-insured retention) because of bodily injury . . . caused by an occurrence which is not covered by or which is not required to be covered by the underlying insurance." He points out that Item 6 of the Declarations states that the retained limit (self-insured retention) is "None." *Id.* (citing Item 6). Thus, Bland contends that so long as the injury was caused by an occurrence not covered or required to be covered by underlying insurance, then there is no amount that must be paid prior to coverage kicking in. Dkt. 15. The "retained limit (self-insured retention)" means the amount of ultimate net loss set forth in Item 6 . . . which shall be paid by or on behalf of the insured before liability attaches to the Company." Dkt. 13, Ex. 1 at Definitions. Since Item 6 indicates this amount is "none," if all the other conditions in the second part of Coverage A are met, then Bland would not be required to pay anything on his own behalf before liability attached to Hudson.

The parties both agree that the events in the Underlying Petition are an "occurrence," so the question for the second part of Coverage A is whether the occurrence is "not covered by or which is not required to be covered by the underlying insurance." The "underlying insurance" is only the policies scheduled in Item 7 of the Declarations, so it is only the Progressive policy that covers the

Hyundai, the Lincoln Navigator, the Chevrolet Corvette, and the Model A.  If the vehicle is the Hyundai, the Lincoln Navigator, the Chevrolet Corvette, or the Model A, then it is definitely covered or required to be covered by the underlying insurance.  If the vehicle in the Underlying Petition is a different vehicle owned by Bland, then it cannot be "required to be covered by the 'underlying insurance,'" because the definition of "underlying insurance" does not include any other policies on any other vehicles.

**D.      What About the Condition of Maintaining Underlying Insurance?**

While the definition of "underlying insurance" does not include policies for vehicles other than the four listed in the schedule, and the court construes the Underlying Petition as indicating that Bland carried some type of insurance on the vehicle involved thus meeting the requirement to insure set forth in Item 7 of the Declarations, the court also looks to the "maintenance of underlying insurance" requirement in the Conditions section of the Hudson Policy, as the policy must be read as a whole.  This condition requires the named insured to maintain insurance for the "minimum underlying limits set forth in Item 7 of the Declarations."  Dkt. 13, Ex. 1 at Condition C.  The "minimum underlying limits" in Item 7 point to the schedule, which only includes the Hyundai, the Lincoln Navigator, the Chevrolet Corvette, and the Model A.  There are no minimum underlying limits set forth in Item 7 of the Declarations for vehicles not listed.  There is thus an ambiguity as to the condition of maintaining underlying insurance with regard to instances in which an owned vehicle is not included in the schedule.

> The next portion of the maintenance of underlying insurance provision states:
>
>> Failure of the named insured to comply with this agreement shall not invalidate this policy, but if any portion of the underlying insurance terminates during the policy period, is uncollectible for any reason, or has applicable limits of liability lower than the minimum required amounts set forth in Item 7 of the Declarations, this policy shall apply

>in the same manner it would have applied had the underlying insurance been in force, fully collectible, and with the minimum required limits of liability.

Dkt. 13, Ex. 1 at Condition C(1). Hudson contends that there is no insurance that covers Bland for the claims in the Underlying Petition and that the court should hold that it has no duty to defend until the limits of liability listed in Item 7 are exhausted. However, the limits of liability in Item 7 refer to specific vehicles; if the vehicle involved is not one of the delineated vehicles, then Hudson's interpretation makes no sense. Since the court must construe any ambiguities in favor of Bland, it construes the Condition to Maintain Insurance in conjunction with its interpretation of Item 7's requirement to "insure all automobiles owned" and considers that condition met under a liberal interpretation of the Underlying Petition.

### E.  Is There a Duty to Defend?

The court next considers the "Defense and Settlement" section of the Hudson Policy. If the "occurrence" is covered but is not "covered or required to be covered" by the underlying insurance, then Hudson must, if no other insurance company has an obligation to do so, defend Bland. Dkt. 13, Ex. 1 § III.A. Because this section mirrors the coverage section, the court interprets it the same way. Construing the Hudson Policy as a whole, the court finds that it is ambiguous with regard to vehicles that Bland owns but that are not listed in the schedule referred to in Item 7. When a policy is ambiguous, the court, under Texas law, construes the policy in favor of the insured. The court thus finds that Hudson has a duty to defend Bland. Hudson's motion for summary judgment with regard to the duty to defend is DENIED. Bland's motion for summary judgment with regard to the duty to defend is GRANTED. Hudson has a duty to defend Bland in the underlying case if there is no other insurer that is obligated to do so. The minimum underlying limits for non-scheduled vehicles owned by Bland are the sum of the limits of liability of any insurance available to Bland for the vehicle.

14

## VI. PUNITIVE DAMAGES

Hudson also claims that it owes no duty to pay or indemnify any award of punitive or exemplary damages, and Bland does not dispute that punitive damages are excluded under the Hudson Policy. Dkts. 1, 15. Bland argues, however, that Hudson must provide a defense of the entire suit unless it can limit the suit to only punitive damages. Dkt. 15. The court agrees that the Hudson Policy excludes punitive damages. *See* Dkt. 13, Ex. 1 at Exclusion C ("This policy does not apply under Coverage A or Coverage B to fines, penalties, punitive or exemplary damages of any kind."). The Underlying Petition seeks damages for past and future pain and mental anguish, disfigurement, loss of earnings and lost earning capacity, and medical expenses incurred. Dkt. 13, Ex. A. It also seeks punitive damages to the extent Bland was grossly negligent, pre-judgment and post-judgment interest, and costs. *Id.* The Underlying Petition is clearly seeking a wide variety of damages that cannot necessarily be separated from the punitive damage request. If there is not a clear distinction between covered and non-covered claims, then apportionment of costs is not feasible and the insurer must cover defense of the entire case. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 398 (5th Cir. 1995) (applying Texas law). Hudson's complaint, however, merely requests a declaration that it has "no duty to pay/reimburse or indemnify Mr. Bland for any judgment for any such award of punitive/exemplary damages." Dkt. 1. The court therefore GRANTS summary judgment as to this aspect of Hudson's claim.

## VII. Conclusion

Hudson's motion to strike (Dkt. 17) is GRANTED. Hudson's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. It is DENIED with respect to Hudson's request for a declaration that is has no duty to defend, but it is GRANTED with respect to Hudson's contention that it has no duty to indemnify Bland for any punitive or exemplary damages award. Bland's motion for summary judgment is GRANTED.

The Hudson Policy requires Hudson to defend Bland for the claims asserted in the Underlying Petition if the vehicle involved is *not* one of the vehicles listed in Item 7 of the Hudson Policy or schedule referred to in Item 7 to the extent no other insurance company is required to defend Bland. The Hudson Policy does not require Hudson to pay, reimburse, or indemnify Bland for any judgment for any awards of punitive or exemplary damages. A final judgment will be entered concurrently with this memorandum opinion and order.

Signed at Houston, Texas on April 22, 2015.

_____
Gray H. Miller
United States District Judge